UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Sheila M. Roberson

    v.                                     Civil No. 13-cv-265-JD
                                            Opinion No. 2014 DNH 010
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R

Sheila M. Roberson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for disability insurance benefits and supplemental security income. In support, Roberson contends that the Appeals Council erred in denying her request for review and asks that the case be remanded for additional administrative proceedings. The Acting Commissioner moves to affirm the decision.


Background

Roberson applied for disability insurance benefits and supplemental security income on April 1, 2010. Roberson was forty-eight years old at the time of her application. She had previously worked as a waitress, bartender, and a deli worker. She alleged disability caused by atrial fibrillation, depression, and anxiety.

In March of 2010, Roberson was admitted to Franklin Regional Hospital due to shortness of breath and was diagnosed with atrial

fibrillation, cardiomyopathy, questionable thyroid disorder, congestive heart failure, and moderate chronic obstructive pulmonary disease ("COPD").  After that episode, Roberson scheduled an examination with Colleen Krug, PA-C.  Krug found irregular heart beat but normal respiration rhythm and depth, normal heart sounds, and normal psychiatric appearance.

Roberson was evaluated in July of 2010 by Dr. Michael Evans. Based on a series of tests, Dr. Evans found that Roberson was capable of understanding and remembering instructions, interacting appropriately, communicating effectively, sustaining attention and completing tasks, tolerating work stress, making simple decisions, maintaining attendance, and following schedules.  Dr. Evans concluded that Roberson's psychiatric prognosis was good.

State agency reviewing psychologist, Michael Schneider, Psy.D. reviewed Roberson's records on July 16, 2010.  He concluded that Roberson's mental impairments were nonsevere.  He found Roberson had mild restrictions in activities of daily life; mild difficulties in social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of extended decompensation.

In August of 2010, Roberson had thyroid level testing that showed good results.  During the remainder of 2010 and into the spring of 2011, Krug checked Roberson's breathing depth and rhythm and prescribed medications for anxiety and depression.

Because Krug did not feel comfortable continuing some of Roberson's medications due to her medical issues and history of alcoholism, Roberson met with Dr. Peter Moran in early May of 2011 to follow up on her medications.  Dr. Moran described Roberson's cognitive functioning and psychiatric appearance as normal and assessed generalized anxiety disorder and a sleep disturbance.

On May 11, 2011, Roberson was evaluated by Elizabeth Hess, Ph.D.  Dr. Hess described Roberson as depressed, irritable, distractible, ruminating, hypersensitive, excessively worried, and with poor concentration.  In testing, Dr. Hess found that Roberson's speech was circumstantial and vague and that Roberson was cooperative but tense and pressured.  Dr. Hess found that Roberson had marked functional loss in activities of daily life, moderate functional loss in social interaction, marked functional loss in work-related performance, and marked functional loss in reactions to stress.  Dr. Hess diagnosed cognitive disorder secondary to alcohol abuse and/or cardiac condition, bipolar II disorder, alcohol abuse in remission, and personality disorder.

At a follow-up appointment on July 13, 2011, Roberson told Dr. Moran that the medications were working.  Dr. Moran noted that Roberson's cognitive functioning and psychiatric appearance were both normal.  On August 4, 2011, Roberson returned to Dr. Moran due to anxiety.  Dr. Moran noted normal cognitive functioning and psychiatric appearance and no behavioral

abnormalities. He found an anxious mood and tearful affect and increased Roberson's dose of Wellbutrin.

Dr. Hess evaluated Roberson again on August 1, 2011. Dr. Hess found that Roberson was more depressed than she had been in May. Based on test results, Dr. Hess found impaired executive functioning, receptive and expressive language deficits, disrupted attention, and an inability to review responses for errors or omissions. Dr. Hess stated that Roberson's overall IQ was sufficient for work but her inability to function consistently and to spot mistakes would be disruptive in employment. Dr. Hess reiterated her previous functional findings.

Roberson saw Dr. Moran on September 6, 2011, after returning from a visit to South Carolina. Roberson reported that she felt refreshed. Dr. Moran noted that changes in Roberson's medications had calmed her down, that Roberson was less anxious and sleeping better, and that her cognitive functioning was normal.

A hearing was held on January 12, 2012, before an Administrative Law Judge ("ALJ"). Roberson testified that she was unable to work because of her heart problems and COPD, which made her tire easily. She also stated that she became depressed at times. Roberson testified that she could walk for fifty yards before needing rest, that she had difficulty staying focused, and had problems with anxiety, including panic attacks at times. She

4

said that on a typical day she has coffee after waking and cleans the bathroom if she feels like doing something.  She stated that she was able to do chores but not all in one day, could cook her meals, grocery shop, and did some pleasure reading.  She also said she lost her driver's license due to a DWI and smoked about five cigarettes each day.

James Scorzelli testified as a vocational expert.  Scorzelli described Roberson's past work as a waitress as light semiskilled work, work as a bartender as light and semiskilled, and as a deli worker in a supermarket as light and unskilled.  The ALJ presented a hypothetical of a person who was forty-eight to fifty years old, with a GED, and having Roberson's past work experience.  The person in the hypothetical was able to sit for six hours and to stand and walk for six hours with rest and change of position after two hours and had the ability to lift up to fifty pounds occasionally and ten pounds frequently.  The ALJ also added restrictions to avoid environmental exposure, to avoid hazards, and to be limited to uncomplicated tasks.  Based on that hypothetical, Scorzelli said that the worker could do Roberson's past work at the deli in a supermarket although the restrictions for sitting and standing could erode the number of jobs available.  Scorzelli stated that the hypothetical would allow work as a surveillance monitor, a credit card checker, and a parking garage cashier with all of the restrictions.

In the second hypothetical, the ALJ added a need for frequent breaks which would reduce the worker's productivity by fifteen to twenty percent.  Scorzelli explained that the additional breaks and reduced productivity would mean an inability to work.

After the hearing, Roberson's representative submitted additional evidence to the ALJ.  The ALJ issued a decision on February 15, 2012, concluding that Roberson was not disabled because she was able to return to her prior work in a supermarket deli and could also do other jobs as described by the vocational expert.  Roberson sought review by the Appeals Council and submitted additional medical evidence.  On April 22, 2013, the Appeals Council denied Roberson's request for review, stating that the additional evidence taken alone or in combination with the record evidence did not show a reasonable probability that the outcome would be different.

## Standard of Review

Ordinarily, the court reviews the decision of the ALJ and "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  In this case, however, Roberson challenges the decision of the Appeals Council to deny review.  "[A]n Appeals Council refusal to

review the ALJ may be reviewable where [the Council] gives an egregiously mistaken ground for this action." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).

### Discussion

In support of her motion to remand for additional administrative proceedings, Roberson contends that the Appeals Council was wrong in denying review because the additional evidence she provided does show a reasonable probability that the outcome would be different.  Specifically, Roberson contends that a questionnaire completed by Dr. Emil Pollak, Jr. shows that she could not do light work, as found by the ALJ, and a psychiatric evaluation by Dr. Virginia Rockhill shows nonexertional functional limitations, contrary to the ALJ's findings.  The Acting Commissioner seeks an order affirming the decision, contending that substantial evidence supports the decision to deny benefits and that the Appeals Council's decision not to review the ALJ's decision was not egregiously mistaken.

A.  Questionnaire

Roberson relies on a "Cardiac Impairment Questionnaire" completed by Dr. Pollak, a cardiologist, on January 31, 2012.  In the questionnaire, Dr. Pollak indicated that although Roberson could sit for eight hours in a work day, she could only stand for a total of one hour.  Dr. Pollak also indicated more lifting

limitations than the ALJ found and checked a box that Roberson would have more than three unscheduled absences per month.

Roberson argues that Dr. Pollak's limitation on her ability to stand contradicts the ALJ's finding that she could stand or walk for six hours of the day. She further argues that Dr. Pollak's limitation restricts her to sedentary work which would lead to a finding of disabled under the Medical-Vocational Guidelines, Table 1. Roberson contends that Dr. Pollak's finding that she would have three or more absences per month contradicts the ALJ's conclusion that she could work. Based on that analysis, Roberson reasons that the Appeals Council mistakenly concluded that the new evidence would not change the outcome of the ALJ's decision.

The standard of review requires Roberson to show that the Appeals Council gave <u>egregiously</u> mistaken grounds for denying review. <u>Mills</u>, 244 F.3d at 5. Roberson does not address the applicable standard.

Grounds may be egregiously mistaken if the Appeals Council denied review, concluding that the new evidence was not material to the disability determination, when the new evidence was material and required a different outcome. <u>Id.</u> at 5-6; <u>see also</u> <u>Brennan v. Barnhart</u>, 2006 WL 217987, at *2-*3 (D. Me. Jan. 25, 2006). On the other hand, when the Appeals Council considers new evidence but concludes that it would not provide a basis for changing the decision, that conclusion is not egregiously

mistaken as long as record evidence supports the decision. See Shea v. Colvin, 2013 WL 5952992, at *10-*11 (D. Mass. Nov. 3, 2013); Moore v. Astrue, 2013 WL 812486, at *15 (D. Mass. Mar. 2, 2013); Robbins v. Astrue, 2010 WL 3168306, at *3-*4 (D.N.H. Aug. 9, 2010); Thibodeau v. Astrue, 2009 WL 903851, at *5 n.6 (D.N.H. Mar. 31, 2009). That is what occurred here.

In this case, as the Acting Commissioner notes, the ALJ relied on Dr. Moran's assessment that Roberson was capable of doing full time work at the light exertional level. Dr. Moran had a treatment relationship with Roberson over several years. Dr. Pollak met with Roberson only once.[1] In the questionnaire, Dr. Pollak wrote that Roberson's prognosis is stable and that her cardiomyopathy is resolved, which appears to contradict the limitations he found further on in the questionnaire. Therefore, it is far from clear that the Appeals Council was wrong, much less egregiously mistaken.

B. Psychiatric Evaluation

The ALJ found that Roberson was able to function on a regular and sustained basis in activities of daily living and in concentration, persistence, pace, and stress reaction. In making that finding, the ALJ relied on medical records from Dr. Moran

---

[1] Dr. Pollak met with Roberson in November of 2011 but completed the questionnaire on January 31, 2012. Dr. Pollak is not mentioned in the Joint Statement of Material Facts, and the administrative record does not appear to include his treatment notes.

9

and Dr. Evans and on Roberson's own function report and hearing testimony.  The ALJ did not credit Dr. Hess's opinions, concluding that they were not properly supported and were contrary to other evidence in the record.[2]

Roberson included a psychiatric evaluation completed by Dr. Rockhill with the new evidence submitted to the Appeals Council. Roberson argues that Dr. Rockhill's evaluation supports Dr. Hess's opinions and contradicts the ALJ's finding that nonexertional limitations did not restrict her ability to function.  Therefore, Roberson asserts, Dr. Rockhill's evaluation shows a reasonable probability of a different outcome.

As is explained above, to succeed in challenging the Appeals Council's decision, Roberson must show that the decision to deny review was egregiously mistaken.  While Dr. Rockhill's evaluation supports Roberson's view of her limitations, other evidence in the record supports the ALJ's findings.  Under these circumstances, Roberson has not shown that the Appeals Council's decision that the new evidence did not show a reasonable probability of changing the ALJ's findings was egregiously mistaken.

---

[2]Although Roberson argues that Dr. Hess's opinions should have been credited over other evidence in the record, the issue she raises for judicial review "concern[s] events subsequent to the . . . hearing" and challenges the Appeals Council's decision, not the ALJ's decision.  Plaintiff's Mem., doc. 9, at 1.

Conclusion

For the foregoing reasons, the plaintiff's motion to remand (document no. 9) is denied.  The defendant's motion to affirm (document no. 11) is granted.

The Appeals Council's decision is affirmed.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 22, 2014

cc:  T. David Plourde, Esq.
     David J. Strange, Esq.